Next case, Jackson v. Ivens et al. May it please the Court, Steve Fogdall on behalf of Appellant George Jackson. All right. If you'd speak up or move the microphone closer, whatever. May I request three minutes for rebuttal? That's granted. Your Honors, the question in this case is, what level of detail was required in Jackson's grievances in order to adequately present his medical delay claim to prison officials before coming to court? Just as one factual question, what is the current status of his sarcoidosis? I met with him last week. He has symptoms. I'm sorry, I don't know if I'm causing that feedback. You know, I do. I apologize. Glad you knew that, Greg. I wouldn't have figured that one out. I never knew that. Thank you very much. I met with him last week. He still has symptoms. His back problem, his neurological issue that's noted in the records. He no longer seems to have the granulomas, so that's not an issue. He still believes that the symptoms that he has are connected with his sarcoidosis. I don't know if that's correct or not. He believes that the symptoms that he has are. How is he being treated now? My understanding is he's not being treated for sarcoidosis. He hasn't received treatment for that condition. The only treatment that he received for that condition was the removal of the swollen lymph nodes from his neck. But doesn't sarcoidosis normally require some type of treatment in order that it not? I mean, it's very treatable if you get it in time. That's my understanding. There's a steroid treatment that's usually indicated for that condition. I don't believe he's ever received that treatment. At least that's what he tells me. Again, the question in this case is the level of detail that was required in Jackson's grievances to adequately present this medical delay claim. Now, he made grievances in April, July, and August of 2000. That's correct. That's correct. Now, he didn't appeal the April or July grievances. He did not. Do you know why? Well, the April grievance he was told, we're dealing with your problem. We assure you that you're receiving adequate medical attention. And he accepted that. I mean, they're the doctors. He's not a doctor. He accepted their assurances that he was getting adequate attention. So that one was resolved. And when there's resolution, there's no further procedure. That's right. And as to the July grievance, that grievance says on its face that it was resolved by his surgery. And the issue is what would a reasonable fact finder take that language to mean? And clearly a reasonable fact finder could take the language resolved by surgery to mean that the medical staff told Jackson, look, we've done what we can do for you. We've removed the lymph nodes. We've diagnosed you. There's nothing else we can do. We've resolved the issue. The page is curious, not to interrupt you, but to focus on Appendix 233. Yes. The response to the grievance looks like it was signed July 31, 2000, saying, you know, stop self-diagnosing, in effect, and you're getting appropriate treatment. So that's July 31. So that was responded to within 10 days. That's right. But then we have a random resolved by surgery 8-2000 that we don't know when or who wrote that. Then we have George Jackson. It looked like he received this on April 24th of 2001. That's right. Which is very strange. That is. There's a signature above the resolved by surgery, and I'm not sure whose signature that is, but it's next to George Jackson's signature. I can tell you what I personally interpreted this to mean. I interpreted this to mean that several months after the surgery was performed, Mr. Jackson and the medical staff together agreed in April of 2001 that the prior surgery had resolved the grievance. Okay. So that's how I interpreted that. Am I correct that under the procedures, if there's not an informal resolution, it's up to the prison to then hold the hearing? That's right. So there's not an appeal that Jackson would have had to file. The process is that the prison then has to take a step, which to my mind, there's never been a hearing under the procedure. Well, that's right. He did make that allegation in the district court, and the district court determined that because Jackson had resolved the grievance, that it was irrelevant that there had never been a hearing. But certainly, and certainly the fact that there wasn't a hearing was irregular under the DOC's own procedures. But from Jackson's perspective, it's a non-issue simply because once he got the surgery, once the lymph nodes were removed and essentially he'd gotten the message from the prison staff that there wasn't anything more they could do, it was clear at that point that he'd received all he could get from the administrative process, and the only thing left for him to do was to sue in court for the delay. And isn't the real issue here that a system such as this is not equipped or designed to resolve or intended to address a grievance for delay? I mean, if you grieve delay, how can they respond to it and say, here's money or there's anything we can do to undo it? No, that's clearly right. Administratively, once you grieve the delay, the only redress you can get for that is simply just the surgery that ends the delay. There's no provision in the DOC's procedures for money damages or for retrospective relief. So once the delay has been resolved, then it's time to come to court and sue for money damages for that. We never really got to the issue in this case of whether there was subjective and objective deliberate indifference in a violation of the Eighth Amendment because of the alleged failure to exhaust the grievance procedure. That's absolutely correct. But he was seen and had swollen lymph nodes in his neck in July. He was treated for an ear infection. In September, they're still swollen. He doesn't file a grievance until April of 2000. And essentially, he has expected these grievances to say which doctor didn't do what correctly. And it's true, as the nurse said, he's not a doctor. How on earth would he know? The problem with sarcoidosis is that the doctors might not have known. So that I don't understand how you can say that he hasn't exhausted his grievances so we can't get to the merits of this. It may be when a court got to the merits, there was no merit. But to put it on failure to exhaust grievances seems strange to me. And I agree with that, Your Honor. I suppose you would. Right over the plate. And the district court, you're correct, didn't reach the merits issues because it granted the defendant's motion for summary judgment. The defendants have asked the court to address those issues. We've asked in its discretion that the court remanded the district court to consider those issues. If the issues were addressed, you're seeking money damages for delay in diagnosis. That's right. That would assume that there was some harm done by the delay in diagnosis. I don't know from what you say about his current condition that you're alleging any physical harm. It was pain and suffering from not knowing what was wrong with him. Well, he believes that his condition got quite a bit worse during those months while he was waiting for the lymph nodes to be taken out. He alleges that it led to infections in his sinuses and in his throat. And he wants the opportunity to prove that by evidence. That's right. That's right. And we'd like the opportunity to do that as well. He asked us to represent him, if the court does remand, to represent him in the district court, and we've agreed to do that. And we'd like the opportunity to develop those issues. And I can address the merits issues if your honors have questions about them. I don't think we get to those. I mean, the sole thing we're reviewing is the basis on which the district court dismissed the claim. Do you want to just touch on the amendment to the complaint issue? Oh, yes. And, again, I'm sure you're familiar with the issue. Jackson had a complaint in which the state defendants were named as parties in addition to the medical defendants. At one point, he concluded that the state defendants weren't responsible for the failure to treat his condition, and so he did file a motion for leave to amend the complaint. That was in April, and then a month later, he filed something to withdraw that. He wrote a letter to the court, which is entered on the docket. Essentially, the court treated it as a motion for permission to withdraw that motion for leave to file. And there's no indication that that letter request was ever considered or ruled upon. And so, at a minimum – In other words, you're saying the court didn't look at the whole picture. He had something out there, but then he withdrew it. So you should consider the claim still to be before the court. If the motion in April was withdrawn in May, the court hadn't ruled by May. That's right. At a minimum, it's an abuse of discretion not to consider the request to withdraw. But more than that, he had a right to withdraw the motion for leave. It could be. I mean, there were so many motions to amend. I think there were six or seven, and the court may have treated them wholesale. And if we send this back, we should tell the court to look at anew. Is it conceded? Oh, I'm sorry. No, no. I agree with you. That's exactly what happened. And that was largely because he wasn't represented in the district court and simply didn't understand the effect of filing so many requests for leave to amend. Which, if you've been on the district court, know the effect of that. I don't doubt it. Is it conceded that the Prison Litigation Reform Act, which deals with conditions of confinement, applies to an Eighth Amendment claim? I think that's right, Your Honor. Yes. If Your Honors have no other questions, I'll sit down. Thank you very much. Good morning. May it please the Court. My name is Bill Gerohr, and I represent Defendants Ivins and Prison Health Services. And I'll be using ten minutes of the allotted time, and the State will be using the other five minutes. Based upon the questioning of the Court, it appears that the focus is on the wrong document. The starting point in our analysis is the complaint. What was pled in the complaint? Plaintiffs would have you believe that there's some broad allegation in the complaint of a continual failure to diagnose over a number of years since a basketball accident. The actual complaint. I think the crux of the complaint was, as I read it, that there was something wrong with me, and it was determined that they needed to take a look at it. I had this growth on my neck, and I was given the option on December 16th of having it excised. And it was August 16th of the following year, eight months later to the day, before they finally did anything. And as it turns out, what was found was something that is fairly significant. And they should have, nobody, while he was complaining, he's not a doctor, nobody really gave him the care and attention that one should give to one with that type of condition. In my reading of the complaint, I'm not sure it's different than yours at this point. The complaint focuses on that eight-month period, specifically Dr. Ivins not performing that elective surgery. By the way, do you know why it wasn't performed for eight months? I do not know. I mean, if that were one of us, we'd want it, if it was December 16th, we'd want it out before Christmas. I understand that, Your Honor. And scheduled for that date. And then there's no real explanation as to why it didn't, it was scheduled a month before to happen on that date, and on that date came and went. I agree that the evidence is lacking in that area. The discovery was done. The answer has not come through in discovery. Are you going to the point that Dr. Ivins is the target of the complaint and Dr. Ivins wasn't the target of the grievance? Is that where you're? That is where I'm going, Your Honor. If you look at the July grievance. Well, what requirement is there in the procedures that the individual, a responsible individual needs to be named or targeted in a grievance? Your Honor, that would focus on the prison policy manual 4.4. Basically, the focus of that inquiry would be on the definition of a grievance, which indicates that it has to be in writing and related to the actions someone has taken against him. You can't allege that someone has wronged you without saying who that person is. Fair notice. Go ahead. I'm sorry. The standard in these Eighth Amendment cases is deliberate indifference, and you're saying it has to be indifference by a particular person. Is that right? If you're going after that particular person, if you're going after the entity, prison health services, you have to establish a custom or a policy. And in this case, there is no evidence of any custom or policy that prison health services was deliberately indifferent to this individual as a result of a policy that they have. It doesn't have to be. It can be a result of a custom. If you're deliberately indifferent, you don't have to show even that you were deliberately indifferent to other people. You have to show that in that case, or maybe it would help if you could show they were deliberately indifferent to a lot of other people. I guess then you would offer in evidence other cases. Is there any question in your mind that prison health services is standing in the shoes of the state when it offers these health services to prisoners? I would concede that they are a state actor for purposes of 1983. Okay. But I think, again, we're back. I'm looking at 387, 388, the procedure. Where is it that the requirement is to name the offending doctor? I have the grievance form in front of me. I don't see it. I don't see it on the form, Your Honor. How would you have to provide it if there's not a place to do it? I think the only thing that I can see that would require it would be in the definition sections on 382, which defines a grievance. It's a written complaint concerning the substance of an action toward an inmate by staff. And how can you make a complaint against Dr. Ivins without specifically naming him? At a minimum, it's an implied requirement. Before we get to – I think we're losing focus on the naming requirement. At a minimum, it is an implied requirement. But if it's a requirement, why isn't it on the form? Your Honor, I think that's better directed to the department. And when you look at other circuits, basically they say in order to exhaust, you've got to do what they put in front of you. And what they put in front of him is Form 585. I agree, Your Honor. And unfortunately, the prison health services did not draft that form. I think perhaps those questions are better directed to the state. Is PHS still involved in the state? No, they're not. There was, after a lot of complaints, I think a few years ago, and something in the papers, I thought they were no longer representing the state. I think even as far as this individual, his surgery was, I think, done by a different provider, although it was Dr. Ivins who was still, I think, doing it. Counsel, isn't it the customer policy at prison health services that you see the person who's on call that day, you might not see the same doctor or the same nurse when you go to sick call? Isn't that correct? I don't know how often Dr. Ivins was there or whether Dr. Burns was the full-time physician. But doesn't that relate to the grievance? If your grievance is nobody paid attention to me, is the prisoner expected to name every person who works for prison health services? Or isn't it sufficient to say, I have this problem and no one's paying attention? I don't believe that is, Your Honor. I believe that you should, if you have a complaint against somebody, you should name them. And that gets back to, I think we're losing focus on the naming requirement in this instance. Well, that's your point. Your point is they should name them, but are you required to name them? My answer would be yes, Your Honor. Because where on this form does it say you should or are required to name them? I concede it doesn't say that on the form, Your Honor. Or in the procedures. I would disagree. I believe that the grievance is implied that you can't. An implied requirement. Notwithstanding the fact that there's a several-page procedure and it doesn't say that. All right, I hope you made it clear. The point that I'm trying to make, Your Honor, is that before we get to the naming requirement, we're focusing on the allegation in the complaint. The allegation in the complaint is that I didn't get my surgery. If you look at the grievances that he has identified as having filed to address that situation. What the court did here was it said that the reason it was denying his claim was that he didn't exhaust because his complaints weren't sufficiently related to what ultimately happened or what was ultimately diagnosed. Okay. Not sufficiently related to the need for a biopsy. And I have real problems with that. I mean, how can you say that the July 2000 grievance was not sufficiently related to the ultimate biopsy? I think if you actually look at that, Your Honor, and that's, I believe, on page 232. And it carries over, skips a page, and carries over to 234. If you read through the actual medical grievance, it discusses the care he's received from Dr. Burns over a number of years and vehemently complains that Dr. Burns doesn't understand what she's doing and that Dr. Burns has failed to properly diagnose him. He also said there's not been a culture of the cystic mass. He's got a mass on his neck and he wants something done. But isn't the proof of the pudding that a month later, when he files the August grievance, you go back, which he specifically talks about needing something done with regard to that mass, some type of culture on the neck that remains, and there needs to be a diagnose or a biopsy of the infection. You say that you're denying it because that, in August, was duplicative of what he put in July. Now, how can you say that in July he didn't have something that related to the need for a biopsy? I believe that the prison health services interpreted the August complaint as being duplicative of the complaints he was making against Dr. Burns, and this goes to the notice requirement. He's continually making complaints that in July he's talking about 1999. If he wanted us to know that he was talking about Dr. Ivins. But what you think isn't what the judge said. What the judge said was that the complaints weren't sufficiently related to a biopsy. And that's what we're reviewing. Correct. The delay in the biopsy is what we're reviewing. No, no, no. We're reviewing the district court's reasoning that was given, that the complaints were not sufficiently related to the need for a biopsy. And that's what the district court said. Okay. Tell us how that's correct, that the complaints were not sufficiently related to the need for a biopsy. I don't believe that the July grievance talks about not having the biopsy. It talks about the problems he was having with Dr. Burns. Action requested to have gram stain and bacterial and fungal culture performed on infected area of neck, sinuses, and head to be examined by a head and neck surgeon or otologist once the testing determined the types of microbial pathogens that caused. I don't know how you. He continued to believe that he had an infection and he wanted testing. I might believe the same thing. I'm not a doctor. And the response was perhaps you've been diagnosing yourself when you don't have the knowledge and background to do so. That certainly doesn't encourage you to say I want Dr. Ivins to do a biopsy. Well, the point is that reading the July grievance, and we don't get to the August grievance because it was never raised below, but the July grievance doesn't give the prison notice that he's complaining about something that Dr. Ivins has done. And that's the crux of this complaint. It's against Dr. Ivins. It's a delay that Dr. Ivins has. Well, but it says, but they have to know who's treating him, don't they? Isn't that up to the prison staff to figure out who is responsible? What should he have said? If he had said, Perenz, Ivins is the one and Perenz, then that would have been sufficient? Would Ivins have done the biopsy? Ivins eventually did do the biopsy. I mean, he is the one that was supposed to do it then. Correct. Not just someone else. They couldn't send him to a hospital for it. Yes, Dr. Ivins was the individual who said he would do it. He said he would do it at his next visit. It wasn't done until August. But, you know, the focus of the complaint here is not broader. It's very limited, and I guess I don't know how to say that, but the complaint is that Dr. Ivins didn't perform surgery, period. This grievance does not address Dr. Ivins' failures. If the prison received this, it would investigate Dr. Burns and what is she doing to attempt to diagnose this problem. And these are requests for diagnostic techniques. The biopsy was also a diagnostic technique. The normal thing to be that if you got it, you would take a look and find out what the facts were rather than saying it's Burns or Ivins. What happened? Did somebody? If you looked at it, you would have found that somebody previously had said that they would do a biopsy, and it wasn't done. And there's where we go into the Eighth Amendment violation. We're not there yet. Well, I think we are to the extent of it's a diagnostic problem. You know, he's requesting a diagnostic technique. He's asking for certain diagnostic prop things to be done. And differences on diagnoses and what types of techniques are going to be used to diagnose, those are medical malpractice-type issues. Those do not raise differences of opinion or differences of request on a diagnostic technique don't raise the level of a violation of the Constitution. Well, did they do anything? Yes, I think in Dr. Burns' summary that you see on A-177 is that, you know, she did treat him and did do some testing. A-176 and 178, there's a whole host of things. You know, he was seen and given some attention every time he went there. He wasn't just ignored. He wanted more to be done. He thought there was an infection of some nature and wanted more to be done. Well, that goes to the merits. I mean, the issue before us is whether the prison system was put on notice sufficiently. And I think your colleague, Mr. Drouwes, is... Yeah. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Stuart Drouwes. I'm a Deputy Attorney General, and I represent the state defendants in this particular case. They are the State of Delaware, the Department of Correction, former Commissioner Stanley Taylor, and former Warden Rick Carney, collectively known as State Defendants. Judge Rendell, you've raised the issue with regards to the prison officials and the prison system being aware of being on notice as far as what Mr. Jackson's complaints were. And I think that's a very relevant point to bring up, and I would say that with regards to that, we have to look to the grievance system, but only briefly, because from the state defendant's standpoint, the grievance is not really the issue here. Rather, what Judge Jordan did in the district court below when he considered the motions to amend and the motions for dismissal of the state defendants and then subsequently the motion to withdraw that. Touching briefly on the grievance issue itself, the grievance procedure set forth specifically within the Bureau of Prisons Manual and the Department of Corrections Manuals as far as what procedures are handled in different areas. As far as grievances, it's a two-tier track. One is non-medical, one is medical. And I will have to admit to the court that as far as the medical is concerned in looking at the forms involved, 585 versus 584, the non-medical is more particular, does require more specificity. There is no indication in reading through it, though certainly it would be something... Do you know why one is more specific than the other? With all due respect, Your Honor, I do not know. This was something that had been promulgated some time ago. It goes through a normal review process periodically, and it's certainly an issue that if it's not being addressed now by the department, will be brought to their attention. My guess is that the grievance form relating to a medical condition is they really want you to focus on the medical condition as opposed to people. Exactly. And particularly in light of the fact that, as I believe Judge Shapiro indicated, you have different physicians on different calls at different times. So it would be very difficult to say specifically that on such and such a date, this doctor is responsible or that nurse or whatever. Instead, you have a collective entity, that being in this case at that time, prison health services, responsible for providing under contract with the state the health services available to the inmates. And they are a separate independent contractor acting, albeit on their own. And getting back to the grievance issue that Judge Rundell has brought before counsel and that counsel, particularly Mr. Jackson's counsel, has indicated as the core issue here, with regards to the grievance procedure, on the medical side, the medical track, that is something that, quite honestly, is not of great concern to the prison officials for the sole reasons that they have engaged the services of somebody, an entity, in this case prison health services, who has the medical expertise, knowledge, and experience to handle medical issues. And so, therefore, when a medical grievance is filed, the process that is set forth and goes in place is that the grievance is conveyed to the medical care provider. He or she or they collectively will review it. They will make a determination as to what the course of treatment, if any, is to be carried out and at what time and what may be appropriate. You may be right, but I think we sort of get stuck here on a civil procedure issue. You have a, it looks like at one point, the plaintiff here, Jackson, agreed that your clients shouldn't be part of this. That's correct, Your Honor. And he files a motion to withdraw them. That's correct. He then reconsiders that, and a month later, he sends a letter saying, I want to withdraw that. I think there's a possibility that they should stay as defendants. The court ignores that. Excuse me, Your Honor. Yeah, go ahead. No, go ahead. Let me respond to that. It's interesting to note if the court, and I'm sure the court has taken notice of it in reviewing the record, if you look at the record and the chronology of events that occurred here, the complaint is filed in, I believe it was August, mid-August of 2001. In September, approximately a month, five weeks later, I believe it was September 25th, the plaintiff files a motion to amend. And all of this, by the way, is done pro se. There was no help by counsel, at least outside counsel, up until the point that we came before this honorable court. All of this was done pro se, and I think the court will have to admit that looking at all the pleadings filed by Mr. Jackson, he seems to be fairly articulate and knowledgeable as far as what the ramifications are, what the procedures happen to be. But approximately five weeks after filing this complaint, he files a motion for leave to amend. And within the confines of that, he indicates that he would like to dismiss the Department of Correction as a party defendant. Seven months later, in April of 2002, after due deliberation and careful consideration, and if we look to the wording of his motion filed at that time, I believe it was April 25th of 2002, you look to the wording of that motion, and in there it says, I have determined, and I think the only inference you can draw from that is that he has looked at this over the course of seven months, that he has determined that the state defendants are not responsible parties for his allegations and contention that he has not been properly diagnosed or properly treated. But during those seven months, the court, this is not Judge Jordan, this is Judge McKelvey, didn't do anything, right? Well, and I'll point out to the court, as the court may or may not be aware, Judge McKelvey, I believe, left office, left the bench, retired, I believe it was approximately either December or January, approximately three to four months after the case was first filed. In that period of time, shortly before he left in December... I thought Judge McKelvey left in 2003. No, I believe he left prior to that, Your Honor, because the vacancy occurred well before the time that Judge Jordan was appointed and took this particular case, among others, in 2003. And in 2001, shortly before he left the bench, defendants, myself on behalf of the state defendants, filed a motion to dismiss, touching upon the merits and citing a number of affirmative defenses. I mean, I don't know where you're going with this. December 21, 2001, you filed a motion to dismiss. April 11, 2002, he did seek to file an amended complaint, naming only the medical defendants. And not surprisingly, May 14, state defendants requested that the motion to file an amended complaint be granted. But then May 22, he wrote asking to withdraw the motion to file an amended complaint. And then again in November 2002, again before the court had ruled, he filed a motion for leave to file an amended complaint in which he stated that since the filing and through the discovery process, the plaintiff has determined that the attached, amended, supplemented, verified complaint properly reflects the correct legal claims and defendants in this case. And with the benefit of discovery, he's saying he has claims against the state of Delaware, Delaware Department of Corrections. And then in January, the case is reassigned to Judge Jordan. And March 7, 2003, Judge Jordan granted the motions to amend, never mentioned that Jackson sought to withdraw the motion to amend. I mean, I'm just not sure where you're going with this.  is that there's a pending motion to dismiss. There was also a pending motion for protective order filed shortly after the motion to dismiss was filed in December of 2001. Those motions were left hanging, unfortunately, when Judge McKelvey left the bench. And until there was an appointment by another judge who could take cognizance of that and take jurisdiction and make a ruling, it was left hanging. What's the point? My belief, well, if Mr. Jackson truly believed that the state defendants remained parties, viable parties and responsible parties to him, and he did, in fact, file a discovery, there were no responses to that discovery filed by the state defendants at any point in time. If he truly believed we remained, my clients remained his party's defendant, it is my belief, and given by virtue of just a gleaning of a record and a review of the record, his knowledge of what the procedures are and the many filings, he would have filed a motion to compel a response to that discovery. If he truly believed they remained viable parties, he would have filed a motion for sanctions. He would have filed a motion for rule to show cause. None of that is in the record. There is nothing else in the record that indicates at any time, and this, of course, goes to the merits, but any kind of notice was given to my clients of the medical problems or the delay involved, which led to the filing of the suit. Because of that, it is my contention on behalf of the state defendants that Mr. Jackson, and because of the previous seven-month period up until April of 2002 when he filed his other motion, had carefully considered the fact and realized that there was nothing in the record, nothing to support his claim that the non-medical defendants, the state defendants collectively, were responsible for his allegations of denial of adequate medical treatment. And notwithstanding the letter that he filed in May, which I would suggest to the court was merely a response to my prodding, if you will, of the court to consider again the April 25th motion that said, please dismiss the state defendants, they're not responsible, by his own determination, that in light of that, he responded and said, well, maybe I'll keep them in. And the November pleading that he filed, when he talks about discovery, Your Honor, there was no discovery propounded upon the defendants or responded to by the state defendants that would have given any credence whatsoever to a claim against the state defendants for the denial of adequate medical treatment. There is nothing in the record to suggest that. There's nothing in the record whatsoever that could support that. And I would suggest to the court that upon remand, if that was the court's inclination, that there would be nothing discovered that would enhance that in any way, shape, or form or lend any further support. The only response to the discovery that I have  That's correct, Your Honor. And what had happened prior to that was there was discovery propounded by Mr. Jackson, pro se, to both, well, presumably, looking at it, most of it was really directed to the medical defendants as far as seeking medical records. All this says is that... The letter indicated that my... The notebooks were thrown away that talked about scheduling dates for surgery. And as it appears, they've responded, we've responded as fully as possible to your discovery request. That's not much of a... It's not a response at all, quite honestly, Your Honor. And the reason for that is that we did not have the medical records. They were in the possession at that time of PHS. And they were made the subject of discovery requests propounded by Mr. Jackson to the medical defendants. But I'm having... Well, go ahead, complete your thought. With regards to the fact that copies of the discovery are given to the state, that's fine, but they were never specifically asked for the state to provide that. The reason for the July letter was that looking through the institutional records and the other files maintained by the department with reference to the inmate, Dr. Burns... That one document that Dr. Burns prepared was discovered. And that was sent on, a copy, a courtesy copy was sent on to Mr. Jackson as it had also been provided to counsel on behalf of PHS, the medical defendants. I'm sorry. Yes, ma'am. I don't understand. You said there was a dangling motion to dismiss. Yes. Is it your position that if you have discovery, you can or have to grant a motion to dismiss? I don't understand the relationship of the discovery of the motion to dismiss, and I don't understand if this was remanded, would you then oppose the motion to amend the complaint or you would not? In other words, the procedure escapes me. With regards to the procedure, Your Honor, there has been mention made both by counsel as well as by the court as to the belief that the state defendants were still defendants up until the time that Judge Jordan, in his series of March opinions in 2003, basically said they were dismissed by your own volition, they will remain dismissed as parties. And further in the... I believe it was the March... I believe it was March the 3rd memorandum, order and opinion the judge issued, in which the judge indicated that there was a pending motion to dismiss on the part of the state defendants. However, I'm going to deny that as being moot. It's rendered moot because you're not parties to this anymore. I don't have to consider the substantive issues on the affirmative offenses. But had he done so, it is the state's wholehearted belief that there would have been a finding that there was no deliberate indifference, which is the crux of an Eighth Amendment claim under 1983 brought by the defendant. That is by the plaintiff, Mr. Jackson. But you're not suggesting that we could rule that if the summary judgment was improperly granted on failure to grieve, you're not saying that we could decide there was no merit to the case anyway? Wouldn't it have to go back for Judge Jordan or some judge to consider? Well, whoever would be sitting in Judge Jordan's place, as far as the medical issue is concerned, there's a separate issue here which has been brought before the court by counsel for Mr. Jackson, that being was there an abuse of discretion by the judge below, and did he err in fact denying... Actually, in essence, it worked to the effect of denying, but by granting his original motion to dismiss in April of 2002, in which he said, I want the state defendants collectively out of here, and he'd already asked that one of them be out as of September of 2001, just weeks after he filed. By virtue of that, the judge... The contention is the judge erred by allowing them out. The judge rationalized his decision by saying, you asked for them to be out. You made that determination. And under Rule 15, now you're asking to amend to bring them back in, in essence, for me to recognize your later motion to withdraw the earlier motion to amend which would have dismissed them. Did the court specifically say... The court did not specifically say it, but I would suggest in looking at the language... My guess was it wasn't brought to the judge's attention. I would tend to disagree with you, Your Honor, respectfully so, because I believe that in the wording of his order, March 12th of 2003, the court says, when the issue is brought before the court concerning the legitimacy of the earlier motion and then the subsequent motion to withdraw the earlier one and thereby retain or bring back the state defendants, the judge indicated that, and I'm quoting here, it's unclear exactly which defendants plaintiff is attempting to reinstate to his complaint. However, it is clear that this present motion attempts to reinstate certain defendants that he previously had specifically asked to be removed from this action. His previous motions to amend were numerous, but they did not affect the forward progression of the case. The present motion, however, will result in undue delay and prejudice to the defendants, the defendants being... And the only ones who had been, and there was any indicia whatsoever that had been dismissed up to that point, were the state defendants. So by inference, I would suggest respectfully so to the court, the judge below did in fact address that. He did consider... He did not ignore it as characterized by Mr. Jackson's counsel at this point in time. He did consider that within the panoply of all the motions before him. But he did say that there would be delay and prejudice to the defendants. But indeed, during the entire time, the state defendants had been acting as if they were still part of the case. They were responding to discovery. So wasn't there error on his part in saying there would be any kind of delay or prejudice because everyone saw that he was trying to withdraw that and consider themselves part of the case? I would respectfully disagree with that, Your Honor. I don't believe that was the case. First of all, I don't think there was response to discovery. The only thing that can be characterized, charitably so, as discovery response by the state defendants is the July 02 letter in which a piece of the medical file, which had already been provided by the medical defendants in response to discovery pounded to them, was a supplementation given, and we indicated that we believe that this absolves us of any further liability, coupled with the fact that if he truly believed we remained parties defendant to the action, my suggestion and my question is, why did he not file any kind of a motion to either compel a response by the state defendants for the response, or file a motion to show cause, as to why they should not be held in contempt for failing to comply with a response to discovery? Why didn't he seek any sanctions? He knew enough about the rules to be able to cite Rule 15 and file a number of amendments. Why didn't he cite to the rules dealing with discovery and possible sanctions to get further response? He obviously still considered the state, notwithstanding his letter of late May of that year, he still apparently considered the state not to be viable defendants, and whatever discovery he alluded to later on in November would have come solely from medical defendants, and there was no indicia that the state were involved with his allegations of denial of adequate medical treatment. All right, I think we get your argument. We appreciate it. I apologize. And I'm sorry to be curt, but the time had expired on both counsel. Thank you. Unless there are specific questions, I'll waive rebuttal. I would like you to address the issue vis-à-vis the state defendants as to whether Judge Jordan did rule and whether his ruling was proper as to whether they should or should not be considered as defendants. It's clear on the two issues. First on the discovery issue. Don't, just wait until you get to the microphone, please. Absolutely. In the July 1 letter that Judge Ambrose read from, Mr. Drower says, it appears that the state defendants have responded as fully as possible to your discovery request. Mr. Jackson took him at his word. There's no reason to file motions to compel discovery when he's been told credibly that there's nothing they can give him. Now, as to the issue of whether, Judge, the district court ruled on the specific letter request to withdraw the motion that would have dropped the state defendants, it's clear that the district court did not consider that request. The order in which the district court considered a later request to file an amended complaint that would have reinstated... That was in November. That's right. This is a later request that Jackson filed. While the letter request to withdraw the motion to amend was pending, he filed a new motion to amend that essentially would have re-added the state defendants back into the case. And that's what the district court later denied, saying, well, we would prejudice the state defendants. And this is on page 6 of the appendix. It's volume 1 of the appendix in the back of our opening brief. Nowhere in this ruling does the district court refer to the letter request to withdraw. In fact, the two docket items that the court notes here, docket item 8 and docket item 50, are not the letter request to withdraw. So there's no evidence from this that the court considered that request. All right. Anything further? Thank you very much. All right, thank you. And we do want to thank the Schneider, Harrison, Segal, and Lewis firm for undertaking this representation. We ask the council to do this, and we appreciate your doing so. It's our pleasure to do it. Thank you very much. Thank you. Thank you, council. The case is well argued. We'll take it under advisement. We'll call our next case.